# UNITED STATES DISTRICT COURT MIDDLE DISTRICT OF FLORIDA

## Case No. _____

SCOTT LAKE,
on behalf of himself and
all others similarly situated,

    Plaintiff,

  v.

AETNA LIFE INSURANCE COMPANY,

    Defendant.

_____/

**DEMAND FOR JURY TRIAL**

**INJUNCTIVE RELIEF SOUGHT**

## CLASS ACTION COMPLAINT

Plaintiff Scott Lake ("Plaintiff"), individually and on behalf of all others similarly situated, brings this Class Action Complaint against Defendant Aetna Life Insurance Company ("Aetna"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, and alleges as follows:

## INTRODUCTION

1. This is a class action on behalf of beneficiaries of non-ERISA plans administered by Aetna who were denied Proton Beam Radiation Therapy ("PBRT") because of Aetna's uniform application of an unlawful medical policy to deny as "experimental or investigational" such treatment for cancer, despite PBRT being recognized for decades by the medical community as an established, medically appropriate treatment for cancer.

2. Instead of acting solely in the interests of the participants and beneficiaries of its health insurance plans, upon information and belief, Aetna denied

coverage for PBRT to treat cancer because, on average, PBRT is more expensive than traditional Intensity Modulated Radiotherapy ("IMRT") or other treatments.

3.      In denying coverage, Aetna follows its Clinical Policy Bulletin No. 270 ("Proton Beam, Neutron Beam, and Carbon Ion Radiotherapy"), which was initially created in 1998 and reviewed most recently on July 29, 2019, (the "PBRT Clinical Policy Bulletin"). While Aetna's PBRT Clinical Policy Bulletin considers PBRT "medically necessary" for persons 21 years old or younger for all types of cancer, it mandates the denial of coverage for PBRT as "experimental or investigational" to treat most cancers on patients over 21 years old for all plans insured or administered by Aetna.

4.      By promulgating and applying its PBRT Clinical Policy Bulletin, Aetna has sacrificed the interests of insureds like Mr. Lake and Class members to artificially decrease the number and value of claims it is required to pay from its own assets (i.e., with respect to self-funded plans with stop-loss provisions requiring Aetna to cover benefits above a certain threshold) and the assets of its employer-sponsored customers (i.e., with respect to other self-funded plans).

5.      Aetna's PBRT Clinical Policy and the resulting denial of PBRT coverage for Plaintiff and members of the Class he seeks to represent (as defined below) violated the terms of the relevant plans.

## THE PARTIES

6.      Plaintiff Scott Lake is a citizen of Florida who resides in Pinellas County, Florida.

7.      Defendant Aetna is a Connecticut corporation with its principal place of

business in Hartford, Connecticut. Aetna is a global health care benefits company, which, along with its wholly owned and controlled subsidiaries, offers, insures, underwrites, and administers health benefits plans, including Plaintiff's health benefits plan, as detailed herein. Aetna offers, insures, underwrites, and administers such health benefits plans for consumers nationwide, including within Pinellas County.

## JURISDICTION AND VENUE

8.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). The amount in controversy exceeds $75,000.00 exclusive of interest and costs, and is between citizens of different States.

9.      This Court has personal jurisdiction over Aetna pursuant to § 48.193(1), Florida Statutes, because Aetna has operated, conducted, engaged in, and carried on a business in Florida and has an office in Florida. Aetna is also subject to personal jurisdiction pursuant to § 48.193(4), Florida Statutes, because it contracted to insure Plaintiff within Florida at the time of contracting.

10.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to these claims occurred in this district, and Aetna does business in this district, including insuring persons in this district.

## FACTUAL ALLEGATIONS

### A. Aetna Issues and Administers non-ERISA Plans in Florida.

11.     Aetna underwrites and/or administers health benefit plans in Florida that are exempt from ERISA, including individual commercial plans, commercial

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

Exchange Plans, Medicare Advantage plans, Medicaid plans, governmental plans, church plans, and voluntary plans ("non-ERISA plans"). In particular, Aetna interprets and applies non-ERISA plans' terms, makes coverage and benefit decisions under the non-ERISA plans within its sole discretion, and provides payment under the non-ERISA plans to participants/beneficiaries and their providers.

12.    The health insurance plans administered by Aetna are either fully insured or self-funded. With respect to fully insured plans, Aetna both, administers the plan by making all benefit determinations, and pays the benefits out of its own assets. With respect to self-funded plans, Aetna administers the plan, but the underlying plan sponsor or employer through which the insurance is provided is ultimately responsible for reimbursing Aetna for the benefit payments.

13.    When processing benefits for a self-funded plan, Aetna makes all benefit determinations and authorizes benefit checks to be issued out of bank accounts that Aetna controls.  Periodically, Aetna will notify the sponsors of the self-funded plans of the need to replenish their accounts so that benefits can be paid.  But Aetna nevertheless continues to control these accounts and is fully responsible for processing the insurance claims and for determining whether to issue the check from these accounts.

**B.  Proton Beam Radiation Therapy.**

14.    PBRT is a procedure that uses protons to deliver a curative radiation dose to a tumor, while reducing radiation doses to healthy tissues and organs, which results in fewer complications and side effects than traditional IMRT.

15.    With PBRT, protons deposit their energy over a very small area called the

4

"Bragg peak."  The Bragg peak can be used to target high doses of proton beams to a tumor, while doing less damage to normal tissues in front of and behind the tumor.  The concentration of proton beams enables patients to tolerate higher total doses of radiotherapy compared with photons, which are used for traditional IMRT.

16.    There is overwhelming evidence that PBRT is safe and effective and is a generally accepted standard of medical practice for the treatment of cancer within the medical community.

17.    PBRT has been well-accepted for over 30 years.  The Food and Drug Administration ("FDA") approved PBRT in 1988 with the following specific statement of indications for intended use: "The [Proton Therapy System] is a medical device designed to produce and deliver proton beam for the treatment of patients with localized tumors and other conditions susceptible to treatment by radiation."

18.    The National Association for Proton Therapy, the Alliance for Proton Therapy and other nationally-recognized medical organizations, and numerous meticulous peer-reviewed studies have validated the safety and effectiveness of PBRT.

19.    Additionally, many respected cancer facilities and providers, including Baptist Hospital's Miami Cancer Institute, MD Anderson Cancer Center, University of Florida, Harvard Medical School/Massachusetts General Hospital, Loma Linda University Medical Center University of Maryland, Northwestern University, Mayo Clinic, Emory University, Case Western Reserve University, Washington University in St. Louis, University of Washington, New York Proton Center, and the Texas Center for Proton Therapy, recommend and use PBRT on a regular basis.

20.    Other insurers, including Medicare, cover PBRT as a safe and effective

treatment for cancer, that is not "experimental."

### C. Aetna's PBRT Clinical Policy Bulletin.

21.     Aetna drafted and implemented the PBRT Clinical Policy Bulletin, which was most recently reviewed on July 29, 2019, based on outdated medical evidence and ignoring accepted medical peer-reviewed evidence that it is safe and effective for the treatment of cancer.

22.     The PBRT Clinical Policy provides that:

Aetna considers proton beam radiotherapy not medically necessary for individuals with localized prostate cancer because it has not been proven to be more effective than other radiotherapy modalities for this indication.[1]

23.     Aetna also considers PBRT "experimental and investigational for all other indications," including cancers in "adults (over age 21) . . . because its effectiveness for these indications has not been established."

24.     On the other hand, Aetna considers PBRT "medically necessary" to treat all "[m]alignancies in children (21 years of age and younger)," as well as certain listed types of tumors.

25.     Aetna's PBRT Clinical Policy Bulletin does not consider PBRT "experimental and investigational" when treating children (21 years of age and younger), and approves PBRT for these patients.

26.     There are no medical studies that support a conclusion that PBRT would be a proven, safe, and effective treatment for the same cancer in one age group, but

---

[1] The PBRT Clinical Policy is available at
http://www.aetna.com/cpb/medical/data/200_299/0270.html.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

not the other.

27.     Aetna employs the PBRT Clinical Policy Bulletin as part of its prior authorization review and adjudication of members and beneficiaries' claims to deny claims for coverage of PBRT as "experimental or investigational" or not "medically necessary" without ever engaging in any reasonable review of clinical records prior to rendering the determination of coverage.

28.     In other words, Aetna cites the PBRT Clinical Policy Bulletin to categorically deny prior authorization requests and claims for reimbursement for PBRT to most cancers on the grounds that PBRT is not <u>medically necessary</u> without regard to the recommendation and assessment of the patients' own oncologist or medical records.

<u>**INDIVIDUAL ALLEGATIONS**</u>

**A. Plaintiff's Plan.**

29.     Plaintiff is a beneficiary of an Open Access Aetna Select HRA Plan prepared for the School Board of Pinellas County (the "Plan").

30.     The Summary Plan Description is a plan document governing Plaintiff's insurance that details the terms and conditions of the Plan.  Page 2 of the Summary Plan Description discloses that "Third Party Administrative Services [are] provided by Aetna Life Insurance Company."

31.      Under the Summary Plan Description, "medical necessity is a requirement for [a beneficiary] to receive a covered benefit under this plan."

32.     The Summary Plan Description defines "Medically necessary" as:

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

Health care services that a provider exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:

- In accordance with generally accepted standards of medical practice
- Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease
- Not primarily for the convenience of the patient, physician, or other health care provider
- Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease.

Generally accepted standards of medical practice means:

- Standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community.
- Consistent with the standards set forth in policy issues involving clinical judgment.

33.    In addition, the Summary Plan Description includes a list of "General exclusions," which are deemed to be services that are not covered under the Plan. One such exclusion is for "[e]xperimental or investigational drugs, devices, treatments or procedures unless otherwise covered under clinical trial therapies (experimental or investigational) or covered under clinical trials (routine patient costs)."

34.    "Experimental or Investigational" is defined as:

A drug, device, procedure, or treatment that is found to be experimental or investigational because:

- There is not enough outcome data available from controlled clinical trials published in the peer-reviewed literature to validate its safety and effectiveness for the illness or injury involved
- The needed approval by the FDA has not been given for marketing

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

- A national medical or dental society or regulatory agency has stated in writing that it is experimental or investigational or suitable mainly for research purposes
- It is the subject of a Phase I, Phase II or the experimental or research arm of a Phase III clinical trial. These terms have the meanings given by regulations and other official actions and publications of the FDA and Department of Health and Human Services
- Written protocols or a written consent form used by a facility provider state that it is experimental or investigational.

35.    The FDA regulates medical equipment and pharmaceutical medications but has no authority to regulate medical procedures.  Radiation therapy is a procedure, and therefore, is not subject to FDA regulation.

36.    The accelerators and other equipment used to generate and deliver PBRT are regulated by the FDA.  On February 22, 1988, the FDA approved the Proton Therapy System, and designated it as a Class II Device for radiological treatment. This classification was codified at 21 C.F.R. § 892.5050 and describes the Proton Therapy System as a "device that produces by acceleration high energy charged particles (e.g., electrons and protons) intended for use in radiation therapy."  Thus, at least as of February 22, 1988, PBRT no longer fit within the E/I Exclusion to the Employer Plan.

37.    PBRT has long been recognized as an established, medically appropriate treatment for the treatment of cancer, including prostate cancer.

**B. Aetna's Denial of Coverage of PBRT to Plaintiff.**

38.    Mr. Lake was diagnosed with prostate cancer in May 2019.  Mr. Lake's radiation oncologist at the University of Florida Health Proton Institute ("UF Health"), Dr. Romaine Nichols, recommended that Mr. Lake undergo PBRT as the

9

most effective treatment option for him because, among other things, the likelihood of achieving a better outcome was greater with PBRT.

39.    On August 29, 2019, Aetna denied Mr. Lake's request for pre-authorization of PBRT because "[t]he plan does not cover experimental or investigational services except under certain conditions.  Please see the reference to experimental or investigational services listed in the Exclusions section of the benefit plan document."

40.    To reach that decision, Aetna stated: "We reviewed information received about your condition and circumstances. We used the Clinical Policy Bulletin (CPB): Proton Beam and Neutron Beam Radiotherapy. Based on CPB criteria and the information we have, we are denying coverage for proton beam radiotherapy. Medical studies do not prove that this procedure is better than and as safe as other radiation treatment for prostate cancer. The American Society for Radiation Oncology (ASTRO, 2013) stated that there is no clear evidence that proton beam therapy for prostate cancer offers any clinical advantage over other forms of definitive radiation therapy."

41.    UF Health submitted two internal appeals on Mr. Lake's behalf, asking that Aetna reconsider its decision to deny coverage or payment for PBRT.  Dr. Nichols explained that "[i]t is especially important to minimize toxicity for a patient such as Mr. Lake who should have an excellent chance of cure and survival.  Serious toxicity from treatment would impact his quality of life as well as his health care costs in the future."  Dr. Nichols concluded that "[a]fter careful review of the patient's history and medical records, proton therapy was deemed to be medically appropriate, therapeutically optimal, and medically necessary treatment."

10

42.   Mr. Lake's first appeal included 91 pages of written materials and was denied in little over a week.

43.   Aetna received the second appeal on September 30, 2019, and upheld its decision to deny coverage the next day, on October 1, 2019.

44.   Notably, in denying coverage, Aetna failed to discuss or even acknowledge the information provided by Dr. Nichols supporting PBRT, including the many studies verifying its safety and efficacy.  Thus, Aetna provided Mr. Lake with no basis for its negative coverage determination aside from its reliance—to the exclusion of all contrary evidence—on Aetna's PBRT Clinical Policy Bulletin.

45.   Mr. Lake then formally requested an external review of Aetna's decision to deny his request for PBRT to treat his prostate cancer.

46.   On November 4, 2019, Mr. Lake received a letter from Aetna indicating that the "independent" review organization, AllMed Healthcare Management, agreed with Aetna's decision to deny coverage for PBRT to treat Mr. Lake's prostate cancer.

47.   Though not obligated to do so, Mr. Lake made a final appeal to The School Board of Pinellas County Schools, which "uph[eld] the previous denial decisions for [PBRT] services, as they are not covered under Aetna's Clinical Policy Bulletin."  No other reason for upholding the denial was given.

48.   Mr. Lake decided to follow the recommendation of his radiation oncologist and received PBRT to treat his prostate cancer, with success.  He personally paid over $78,000 for the treatment out-of-pocket. The PBRT treatment was unreimbursed, though some ancillary charges for medical consultations and other services were reimbursed by Aetna.

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

## CLASS ALLEGATIONS

49.     The proposed Class meets all requirements of Rule 23(a) and (b) of the

Federal Rules of Civil Procedure.

**A. The Class.**

50.     Plaintiff brings claims on his own behalf and on behalf of a "Nationwide

Class," defined as:

> All participants or beneficiaries in non-ERISA Plans underwritten or
> administered by Aetna Life Insurance Company who, citing the
> application of the PBRT Clinical Policy Bulletin, were denied health
> insurance coverage for Proton Beam Radiation Therapy to treat their
> cancer, on grounds that included the assertion that it was "experimental
> or investigational" or not "medically necessary."  The Nationwide Class
> includes both persons whose post-service claims for reimbursement were
> denied and persons whose pre-service requests for authorization were
> denied.

51.     Plaintiff also brings claims on his own behalf and on behalf of a "Florida

Subclass,"[2] defined as:

> All participants or beneficiaries in non-ERISA Plans underwritten or
> administered by Aetna Life Insurance Company under Florida law who,
> citing the application of the PBRT Clinical Policy Bulletin, were denied
> health insurance coverage for Proton Beam Radiation Therapy to treat
> their cancer, on grounds that included the assertion that it was
> "experimental or investigational" or not "medically necessary."  The
> Florida Subclass includes both persons whose post-service claims for
> reimbursement were denied and persons whose pre-service requests for
> authorization were denied.

52.     Excluded from the Class are: (a) Defendant, including any entity or

division in which Defendant has a controlling interest, as well as its agents,

representatives, officers, directors, employees, trustees, and other entities related to,

---

[2] The Nationwide Class and the Florida Subclass are referred to collectively as the
"Class."

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

or affiliated with Defendant, (b) Class Counsel, and (c) the Judge to whom this case is assigned and any members of the Judge's staff or immediate family.

53.     Aetna issues health insurance plans on policy forms drafted by Aetna.

54.     The definition of "experimental or investigational" services or treatment in Aetna's health insurance policies at all relevant times has been substantially similar to the definition in the Plan, and is interpreted by Aetna as having the same meaning as, comparable exclusions included in the Aetna plans applicable to all Class members.

**B. Numerosity.**

55.     The members of the Class are so numerous that joinder of all members is impractical.

56.     While the precise number of members in this Class is known only to Aetna, Aetna has issued the policies providing coverage under tens of thousands of health insurance plans, and PBRT has become so widespread that at a minimum, requests numbering in the hundreds, if not thousands, must have been submitted to and denied by Aetna for coverage of this therapy.

57.     The Class is ascertainable because its members can be readily identified using Aetna's claims data.  PBRT therapy is described with a discrete set of procedure codes under the Current Procedural Terminology ("CPT") promulgated by the American Medical Association.  Accordingly, Class members can be readily and objectively ascertained through use of records maintained by Aetna.

58.     Finally, Class members are dispersed geographically throughout the United States, such that joiner of all members is impracticable.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

## C. Predominance of Common Issues.

59.    This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers predominate over questions affecting only individual Class members.   These include, without limitation:

a.    Whether PBRT therapy is an "experimental or investigational" service or treatment;

b.    Whether the PBRT Clinical Policy Bulletin is based on outdated medical evidence;

c.    Whether Aetna categorically applied the PBRT Clinical Policy Bulletin to deny coverage to Class members;

d.    Whether Class members' claim denials were based in whole or in part on the Aetna PBRT Clinical Policy Bulletin;

e.    Whether Aetna acted in good faith in creating, developing, revising, and/or applying the PBRT Clinal Policy Bulletin to deny coverage to Class members;

f.    Whether the creation, development, and application of the Aetna PBRT Clinical Policy Bulletin constituted a breach of its contracts with Class members;

g.    Whether Aetna unjustly benefited from its uniform application of the PBRT Clinical Policy Bulletin; and

h.    Whether Class members are entitled to the relief sought if Plaintiff establishes liability.

14

### D. Typicality.

60.     Plaintiff's claims are typical of the claims of Class members because Plaintiff is a beneficiary of a non-ERISA Plan administered by Aetna, he submitted a claim for coverage of PBRT for treatment of his cancer, and, like other Class members, Aetna denied his claim based on the PBRT Clinical Policy Bulletin and an incomplete research database that it references with respect to all requests for coverage of PBRT for treatment of cancer.

### E. Adequacy of Representation.

61.     Plaintiff will fairly and adequately protect the interests of the Class. Plaintiff's interests do not conflict with the interests of the members of the Class. Further, Plaintiff has retained counsel who are competent and experienced in complex class action litigation, and Plaintiff and his counsel intend to prosecute this action vigorously on behalf of the Class members and have the financial resources to do so. Neither Plaintiff nor his counsel has any interest adverse to those of the Class members.

### F. Superiority.

62.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Aetna.

63.     This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because by applying a uniform policy treating PBRT as "experimental," investigational" or "unproven," Aetna has acted and refused to act on grounds that apply generally to the

Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class members, and making final injunctive relief or corresponding declaratory relief appropriate respecting the proposed Class as a whole.

64.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.  Questions of law and fact common to the Class members predominate over any questions affecting only individual members.

65.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable.  Further, because the unpaid benefits denied Class members are small relative to the expense and burden of individual litigation, it would be impossible for the members of the Class to redress individually the harm done to them, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

66.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to

the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives under Fed. R. Civ. P. 23(b)(3)(D).

## COUNT I

### BREACH OF CONTRACT - IMPROPER DENIAL OF BENEFITS

67.    Plaintiff incorporates by reference paragraphs 1 through 66 as if fully stated herein.

68.    Plaintiff brings this claim individually and on behalf of all Class members under the common law of breach of contract.

69.    Plaintiff and the Class members contracted with Aetna for specific healthcare coverage.

70.    During the relevant time period, there existed a valid and enforceable agreement between Aetna and Plaintiff and the Class members.

71.    Plaintiff and the Class members has, at all relevant times, the right to receive insurance benefits owed according to their contract with Aetna.

72.    Aetna denied the insurance claims for PBRT submitted by Plaintiff and the Class members in violation of the terms of Plaintiff's and the Class members' Aetna plans. In particular, PBRT is not "experimental and investigational" for the treatment of cancer.

73.    Aetna therefore materially breached its respective contracts with the Plaintiff and the Class members by failing to provide the full extent of insurance benefits owed to Plaintiff and the Class members, including optimal and effective cancer treatment recommended by their respective oncologists (namely, PBRT).

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

74.    Plaintiff and the Class members have been harmed by Aetna's improper benefit denials in the form of the time spent and funds expended out-of-pocket to obtain the treatment and because they were deprived of insurance benefits they were owed.

75.    Aetna's breaches have damaged Plaintiff and the Class members, who have a right to receive such benefits.

76.    Plaintiff and the Class members seek the relief identified below to remedy this claim.

## COUNT II

### UNJUST ENRICHMENT

77.    Plaintiff incorporates by reference paragraphs 1 through 66 as if fully stated herein.

78.    Plaintiff brings this claim individually and on behalf of all Class members under the common law of unjust enrichment.

79.    Plaintiff and the Class members directly conferred benefits on Aetna by paying their full premiums to Aetna, which Aetna has received and retained, in exchange for providing healthcare coverage.

80.    Aetna wrongfully denied approval or reimbursement for PBRT, thereby unjustly saving the cost of more expensive, but more effective, PBRT treatments. Aetna was further unjustly enriched by the amount in investment income it received by retaining the funds to pay for the PBRT due its policy of denying the treatment.

81.    It is inequitable for Aetna to retain these benefits. Aetna will be unjustly enriched if it is allowed to retain the aforementioned benefits, and each Class member is entitled to recover the amount by which Aetna was unjustly enriched at his or her

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

expense.

82.    The amount of Aetna's unjust enrichment should be disgorged, in an amount to be proven at trial.

83.    Plaintiff, on behalf of himself and all Class members, seeks an award against Aetna in the amount by which they have been unjustly enriched at Plaintiff's and the Class members' expense, and such other relief as this Court deems just and proper.

## COUNT III

### CLAIM FOR DECLARATORY AND INJUNCTIVE RELIEF
### (Florida Statute Section 86.011)

84.    Plaintiff incorporates by reference paragraphs 1 through 66 as if fully stated herein.

85.    Plaintiff brings this claim individually and on behalf of all Florida Subclass members.

86.    As the third-party administrator of its non-ERISA plans, Aetna has an obligation to process claims and make determinations of medically necessary covered services to its members and beneficiaries.

87.    As the direct insurer of its non-ERISA plans, Aetna provides and administers the non-ERISA Plans at issue and arranges for health care services for these health plan members under the non-ERISA Plans. As such, Aetna has an obligation to process claims and make determinations of medically necessary covered services to its members and beneficiaries.

88.    An actual, immediate controversy exists among the parties regarding

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

whether coverage for PBRT for the treatment of cancer is afforded under the Plan and other non-ERISA plans offered and administered by Aetna.

89.    Plaintiff, the Florida Subclass members, and Aetna are in dispute as to the parties' respective rights, obligations, and duties pursuant to the terms and conditions of the Plan and other non-ERISA plans issued and administered by Aetna and the creation, development, and application of the PBRT Clinical Policy Bulletin to categorically deny coverage for PBRT to treat cancer.

90.    A good faith dispute exists as to the issues set out in paragraph 59 of this Complaint.

91.    Plaintiff and Florida Subclass members have a substantial interest at stake in the resolution of this controversy, namely, obtaining the reprocessing of their claims without application of the PBRT Clinical Policy Bulletin, as well as any other applicable supplemental relief.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff demands judgment in his favor and against Defendant Aetna as follows:

A.    Certifying the Class, as set forth in this Complaint, and appointing Plaintiff as Class Representative and undersigned counsel as Class Counsel;

B.    Declaring that Aetna violated the Plaintiff's Plan, and the similar non-ERISA Plans of the other members of the Class, and awarding appropriate equitable and supplemental relief including disgorgement and surcharges;

C.    Ordering Aetna to reprocess Plaintiff's and Class members' claims

**Colson Hicks Eidson**
255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444

without application of the PBRT Clinical Policy Bulletin;

D.    Ordering Aetna to create a common fund out of which it will make payment, with interest, of any unpaid benefits to Plaintiff, the nationwide Class, and the Florida Subclass members;

E.    Awarding Plaintiff disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

F.    Granting such other and further relief as is just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

**Colson Hicks Eidson**
**255 Alhambra Circle, Penthouse, Coral Gables, Florida 33134-5008 Telephone: (305) 476-7400 Fax: (305) 476-7444**

DATED: May 11, 2020.

Respectfully submitted,

**COLSON HICKS EIDSON**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com


*/s/  Stephanie A. Casey*
Stephanie A. Casey, Esq.
Florida Bar No. 97483
scasey@colson.com
*Trial Counsel*

– and –

**KOZYAK TROPIN & THROCKMORTON, LLP**
Counsel for Plaintiffs and Classes
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: */s/ Maria D. Garcia*
　　　　Harley S. Tropin
　　　　Florida Bar No. 241253
　　　　Email: hst@kttlaw.com
　　　　Maria D. Garcia
　　　　Florida Bar No. 58635
　　　　Email: mgarcia@kttlaw.com
　　　　Robert Neary
　　　　Florida Bar No. 81712
　　　　Email: rn@kttlaw.com
　　　　Frank A. Florio
　　　　Florida Bar No. 1010461
　　　　Email: fflorio@kttlaw.com

*Counsel for Plaintiff and the Putative Class*